

No. 18211

# The University of the State of New York

## The State Education Department

**Before the Commissioner**

Appeal of ADRIANNE RICKSON from action of the Albany-Schoharie-Schenectady-Saratoga Board of Cooperative Educational Services regarding a personnel matter.

Honeywell Law Firm, PLLC, attorneys for respondent, Paul M. Aloy, Esq., of counsel

Petitioner appeals the decision of the Albany-Schoharie-Schenectady-Saratoga Board of Cooperative Educational Services ("BOCES" or "respondent") to discontinue her probationary appointment. The appeal must be sustained in part.

This appeal arises out of the events described in *Appeal of Rickson* (62 Ed Dept Rep, Decision No. 18,147) ("*Rickson I*"). The facts of that decision are set forth therein and need not be repeated in full here. In brief, respondent terminated petitioner's probationary appointment in *Rickson I* based on three stated reasons, which I found to be "too vague to allow petitioner to ascertain whether any of the reasons were constitutionally or statutorily impermissible" (internal quotation marks, brackets, and citation omitted). Respondent attempted to offer more specific reasons for the termination on appeal, which I declined to consider. For relief, I remanded the decision to respondent and ordered, among other things, that (1) the district superintendent resubmit her recommendation with "appropriate specifics of the reasons therefor"; and (2) the BOCES board reconsider its vote to discontinue petitioner's probationary appointment.

By letter dated July 13, 2022, the district superintendent resubmitted her recommendation to terminate petitioner's probationary appointment. Petitioner opposed respondent's recommendation, asserting that respondent violated her constitutional rights and that BOCES failed to adhere to my order in *Rickson I*. The BOCES board again voted to terminate petitioner's

probationary appointment at its August 15, 2022 meeting. This appeal ensued.

Petitioner argues that her discontinuance was unlawful because respondent violated, among other rights, her rights under the First Amendment and the Taylor Law.[1] Petitioner seeks reversal of respondent's decision to discontinue her probationary appointment, reinstatement, and back pay.

Respondent argues that petitioner's claims arising under the Open Meetings Law and Taylor Law must be dismissed for lack of jurisdiction. Respondent also argues that the appeal must be dismissed for failure to join a necessary party. On the merits, respondent contends that it discontinued petitioner's probationary service for legitimate, non-discriminatory reasons.

First, I must address the procedural issues. Public Officers Law § 107 vests exclusive jurisdiction over alleged violations of the Open Meetings Law in the Supreme Court of the State of New York (*Appeal of Flippen*, 57 Ed Dept Rep, Decision No. 17,296; *Appeal of McColgan and El-Rez*, 48 *id.* 493, Decision No. 15,928). Therefore, such allegations may not be adjudicated in an appeal pursuant to Education Law § 310, and I have no jurisdiction to address the Open Meetings Law allegations raised in this appeal.

Next, respondent alleges that James Mahoney, Jr., a teacher appointed to a probationary appointment in the tenure area of law enforcement services 7-12 on July 14, 2022, is a necessary party to this appeal. Any such deficiency has been cured during the pendency of the appeal by the joinder of Mr. Mahoney (*see Appeal of Wheeler*, 61 Ed Dept Rep, Decision No. 18,083).

Turning to the merits, the services of a probationary teacher may be discontinued at any time during the probationary period unless the teacher shows that a board terminated service for a constitutionally impermissible purpose, in violation of a statutory proscription, or in bad faith (Education

---

[1] To the extent that petitioner seeks removal of the district superintendent and board members, such application must be denied for lack of the required notice. Section 277.1 (b) of the Commissioner's regulations dictates the specific notice required for removal applications pursuant to Education Law § 306, which is distinct from the notice required under section 275.11 (a) for appeals pursuant to Education Law § 310. The notice of petition secures jurisdiction over the intended respondent and alerts the respondent that he or she must appear in the removal proceeding and answer the allegations contained in the application (*Application of Johnson, et al.*, 56 Ed Dept Rep, Decision No. 17,055; *Appeal of Hertel*, 49 *id.* 267, Decision No. 16,021; *Application of Barton*, 48 *id.* 189, Decision No. 15,832). Thus, a removal application that does not include the specific notice required by 8 NYCRR 277.1 (b) is fatally defective and must be denied (*Application of Johnson, et al.*, 56 Ed Dept Rep, Decision No. 17,055; *Appeal of White and Carmand*, 56 *id.*, Decision No. 16,994; *Appeal of Kelly*, 45 *id.* 38, Decision No. 15,253).

Law § 3012 [1] [a]; *Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y.*, 71 NY2d 763, 765 [1988]; *James v Board of Educ. of Cent. School Dist. No. 1 of the Towns of Orangetown & Clarkstown*, 37 NY2d 891, 892 [1975]; *Appeal of Newton*, 56 Ed Dept Rep, Decision No. 17,007; *Appeal of Tahir*, 46 *id.* 16, Decision No. 15,426). The Commissioner has defined "bad faith" as "[d]ishonesty of belief, purpose, or motive" (*Appeals of Prisinzano*, 62 Ed Dept Rep, Decision No. 18,195, citing Black's Law Dictionary [11th ed. 2019]).

In an appeal to the Commissioner, a petitioner has the burden of demonstrating a clear legal right to the relief requested and establishing the facts upon which he or she seeks relief (8 NYCRR 275.10; *Appeal of P.C. and K.C.*, 57 Ed Dept Rep, Decision No. 17,337; *Appeal of Aversa*, 48 *id.* 523, Decision No. 15,936; *Appeal of Hansen*, 48 *id.* 354, Decision No. 15,884).

The record supports a finding that petitioner's probationary appointment was discontinued in bad faith. In *Rickson I*, respondent provided petitioner with the following reasons for recommending her termination:

> (1) Use of controversial materials that had no valid curricular purpose.
> (2) Failure to utilize approved curriculum for instruction.
> (3) Use of BOCES resources to promote misinformation.

In this appeal, the district superintendent materially modified her reasons for recommending petitioner's discontinuance. The notice at issue in this appeal reads as follows:

> On November 10, 2021, [petitioner] violated the BOCES's Acceptable Use Policy by sending a mass email solicitation without prior approval from the District Superintendent.
>
> On or about January 6, 2022, [petitioner] misused [her] position as a Criminal Justice teacher by issuing an assignment that was not part of ... the approved curriculum for your Criminal Justice 2 course and had no valid curricular purpose.

While respondent originally objected to petitioner's use of "controversial materials" and "promot[ion] [of] misinformation," it abandoned such views in

3

the second notice in favor of seeking petitioner's dismissal upon the content-neutral, procedural grounds of failure to adhere to board policy and curricula. In *Rickson I*, I directed the district superintendent to resubmit her reasons for recommending termination "containing appropriate specifics of the reasons" previously provided—not to produce new or improved reasons. The fact that respondent materially altered its rationale from content-based to content-neutral complaints demonstrates a "[d]ishonesty of ... purpose [] or motive."

The reasons that respondent provided on remand for petitioner's discontinuance also call into question respondent's "purpose [] or motive"—which, in turn, further supports a finding of bad faith. Turning first to the claimed email policy violation, as stated in *Rickson I*, petitioner sent an email on November 10, 2021 from her BOCES email account to colleagues that included the following message in the body of the email: "For those that did not receive it and have interest. Rally at [New York State United Teachers] today at 4" (the "NYSUT email"). On February 7, 2022, the BOCES principal and director of career and technical education issued a counseling memorandum to petitioner (the "counseling memorandum"), stating that the NYSUT email violated BOCES' acceptable use policy and directed petitioner to refrain from such use of her work email. The counseling memo stated that its purpose was "to warn [petitioner] of the serious consequences of failing to meet [her] professional responsibilities when interacting [with] colleagues and staff, and ... [to] follow [] directives as stated [in the memorandum]."

The fact that the counseling memorandum warned that "further behavior like this" would subject petitioner to discipline, including discharge, suggests that respondent had no intention of discontinuing petitioner's probation based on the NYSUT email alone. Further, as indicated above, the district superintendent's initial reasons for recommending discontinuance on February 22, 2022 made no mention of the NYSUT email or respondent's acceptable use policy.[2] That respondent now attempts to rely on the NYSUT email as a basis for discontinuance when the text of the counseling memo demonstrates that respondent did not view the email as a serious offense further supports a finding of bad faith.

I also decline to adopt respondent's argument that it properly discontinued petitioner's probation because its board policy prohibits the use of district email for non-work purposes. This prohibition is not ironclad as it permits "incidental personal use of BOCES electronic resources." The policy goes on to state that "such [personal] use is not permitted for solicitation,

---

[2] In *Rickson I*, I noted that although the parties interpreted the "misinformation" reason to concern the NYSUT email, "it [wa]s not facially evident how the email promoted misinformation."

4

fund raising or other outside purposes without proper authorization." The revised notice characterized the NYSUT email as a "solicitation without prior approval," but it is unclear what petitioner was allegedly "solicit[ing]." On its face, the NYSUT email merely informs recipients of a union-related rally.[3]

As for respondent's second reason, the discontinuance of petitioner's employment for a single extra credit assignment violated petitioner's right to academic freedom. Boards of education have the right to "establish and apply" curricula (*Matter of O'Connor v Sobol*, 173 AD2d 74, 78 [3d Dept 1991] [internal quotation marks and citations omitted]). This right, however, must be balanced against teachers' right to academic freedom (*Matter of Malverne Union Free Sch. Dist. v Sobol*, 181 AD2d 371 [3d Dept 1992]). As the Commissioner has explained: "[t]eachers are not neutral conduits of information from some external source to pupil's minds; they are active participants in the process of inquiry ..." (*id.*). As such, a teacher has the right to deliver instruction "where it can be shown that the instructional material has educational value[,] ... is relevant to the curriculum[,] and suitable to the age and maturity of the students" (*id.*).

In the assignment at issue, petitioner informed her students that they could obtain extra credit[4] if they listened to an interview with a physician and submitted written responses to several discussion questions. The interviewee, Dr. Robert Malone, is a critic of COVID vaccinations. The discussion questions included the following:

- Explain [the physician's] credibility/experience.
- What are his reason(s) for speaking out?
- Why was he banned from Twitter?
- How did Sweden respond to COVID? What were the results?
- List ... hospital[s'] incentives to diagnose patients [] with COVID.
- Do you think our Constitutional rights are being upheld or violated[?] [E]xplain[.]
- What do you think of this podcast?

---

[3] In that vein, although respondent is correct that I am generally without jurisdiction to decide a dispute that arises under the Taylor Law, if respondent had terminated petitioner for union-related activity, such a violation of the Taylor Law would be an impermissible basis for discontinuance of a probationary appointment under Education Law § 3012 (1) (a) (*see Matter of Capece v Schultz*, 24 Misc 3d 1230[A] [Sup Ct, Richmond County 2009]).

[4] Respondent contests petitioner's characterization of the assignment as extra credit, as petitioner recalled that it was assigned over holiday break, while a copy of the online assignment bears the date of January 6, 2022. Even assuming that petitioner was mistaken about the date, this does not mean she was mistaken that the assignment was for extra credit. In this respect, petitioner indicates that respondent possesses her grading materials and could confirm whether any grades were given for the assignment. Respondent has not submitted any such materials.

5

- Has it changed any of your views?

Respondent's notice of discontinuance claims that this assignment "had no valid curricular purpose" and was the result of petitioner's "misuse[]" of her position as a teacher. Respondent further argues on appeal that the assignment contained "leading questions ... designed to push students into believing ... misinformation." The record, however, supports a finding that petitioner's assignment had academic value. Petitioner explains that the intent of the assignment was to encourage students "to think critically" by exploring the following concepts:

> thinking outside the box; putting [students] in others['] shoes before placing judgment; comparing countries; studying nonverbal communications to ascertain truth versus lies; to ascertain motive for speech, which denies or affords reliability of the source; [and the] implementation and evolution of laws and their definitions as ... applie[d] to technological and scientific advancements ....

Petitioner's explanation is supported by the open-ended nature of several of the questions; *e.g.*, whether students felt their "Constitutional rights [we]re being upheld or violated" and asking what they thought of the podcast. To be sure, petitioner's assignment was not flawless. For example, petitioner characterized the podcast as "great," which could be interpreted as an endorsement of the interviewee's views. However, there is no evidence in the record that any student or parent interpreted the assignment as petitioner "misus[ing]" her position to promote misinformation.[5]

Petitioner has also demonstrated, on this record, that the assignment was sufficiently relevant to the Criminal Justice curriculum such that she could offer it as an extra credit assignment. Petitioner asserts that vaccination is relevant to the field of criminal justice, citing several news stories in which individuals were charged with crimes for failing to comply with vaccine mandates. Petitioner also argues that, in teaching a career and technical education course ("CTE"), she is responsible for helping students "obtain technical skills, apply academic skills, and develop career-related

---

[5] This appeal is unlike cases where teachers sought protection for articulating their personal views in the classroom (*see e.g. Piggee v Carl Sandburg Coll.*, 464 F3d 667 [7th Cir 2006]). However, I note that the Commissioner has determined—and the Appellate Division has affirmed—that a teacher was protected by principles of academic freedom even when she expressed her personal views (*see Appeal of the Board of Educ. of the Malverne Union Free Sch. Dist.*, 29 Ed Dept Rep 363, Decision No. 12,320, *affd* 181 AD2d 371 [3d Dept 1992] [upholding assignment based on grounds of academic freedom even though assignment included newspaper editorial authored by teacher containing her personal views]).

6

behaviors." Her argument is generally supported by the "Safety, Health and Environmental" standard for the National Law Enforcement Services Pathway, which states that it is necessary for members in this field to "[u]nderstand the importance of health, safety, and environmental management systems in organizations and their importance to organizational performance and regulatory compliance...."[6] Among the subtopics in this standard area is content related to identifying rules designed to promote workplace health and safety and their accompanying rationales.

Respondent has not proven that petitioner's assignment was outside the scope of its board-approved curriculum. Initially, respondent did not submit a copy of any such curriculum,[7] merely offering a scope and sequence for Criminal Justice II that outlines the broad contours of the course: *e.g.*, "Ch 1 – Criminal Investigations and Overview" and "Ch 2 – Documenting the Crime Scene." This document does not establish that petitioner's assignment was prohibited by respondent's curriculum. For example, the assignment could relate to the "Creating Professional Portfolio" assignment or "Communication Skills," which lasted for most of the course—or legal compliance generally, which is embedded within several topics.

Finally, the record supports a finding that the assignment was suitable in light of the age and maturity of petitioner's students, who were juniors or seniors in high school.[8] This means that petitioner's students were eligible, or nearly eligible, to vote. As the Second Circuit Court of Appeals has reasoned, "[i]t would be foolhardy to shield our children from political debate and issues until the eve of their first venture into the voting booth. Schools must play a central role in preparing their students to think and analyze and recognize the demagogue" (*James v Board of Educ. of Cent. Sch. Dist. No. 1 of the Towns of Addison*, 461 F2d 566, 574 [2d Cir 1972]).

The assignment's appropriateness is further demonstrated by the absence in the record of any student or parental objection thereto.[9] Far from expressing concern or offense, the record contains glowing assessments of petitioner's ability as a teacher from her students. In response to her

---

[6] Advance CTE, "National Career Clusters Framework: Law, Public Safety, Corrections and Security Cluster Law Enforcement Services Pathway Knowledge and Skill Statements," https://cte.careertech.org/sites/default/files/K%26S-CareerPathway-LW-LawEnforcementSvc-2008.pdf, at p. 8 (last accessed Nov. 16, 2022).
[7] Any ambiguity arising therefrom does not inure to respondent's benefit.
[8] *See* Capital Region BOCES, "Criminal Justice," https://www.capitalregionboces.org/career-technical-education/courses-programs/criminal-justice/ (last accessed Nov. 16, 2022) (noting that enrollment is limited to juniors and seniors in high school).
[9] Indeed, respondent only learned of the assignment via an "anonymous complaint from a BOCES teacher" who remains unidentified.

discontinuance, over 200 people[10] signed an online petition supporting petitioner's reinstatement. Among them were students, who offered observations such as:

- "An amazing educator and advocate for students!";
- "Mrs. Rickson was the most amazing teacher I had ... she motivated me and helped me be a better version of myself and ... totally turned my life around";
- "Mrs. Rickson has been my teacher for the last year and a half. I couldn't ask for a better teacher.... Her class is the only class I have ever had where we are all a family"; and
- "Mrs. Rickson is a motivational educator in a field that is in need of caring, competent individuals like her. She inspires her students to do their best ... She is an asset and BOCES is lucky to have her as a teacher there."

Upon review of the text of the assignment and petitioner's explanation, I find that petitioner has met her burden of proving that respondent's second reason for discontinuing her position was pretextual. Respondent was entitled to investigate the anonymous allegation that petitioner delivered an inappropriate assignment—but it did not. Instead, it appears that respondent dismissed the assignment as "misinformation" without considering its context or petitioner's intentions. Respondent's reflexive response to this lone extra credit assignment, which did not consider petitioner's right to academic freedom, constituted bad faith.

Accordingly, for the reasons stated above,[11] I find that respondent's discontinuance of petitioner's probationary position was effected in bad faith and must be reversed (*compare Matter of Laskar v Department of Educ. of City of N.Y.*, 175 NYS3d 472, 473 [1st Dept 2022] [holding that petitioner's discontinuance was effected in "good faith" when based on benchmark assessments that "reflected a lack of consistent improvement, despite receiving significant professional support"]; *Matter of Palmore v Board of*

---

[10] While the record contains the comments of approximately 20 signatories, I take notice of an online version of the petition that contains over 200. Change.org, "The Reinstatement of Adrianne Rickson," https://www.change.org/p/students-upset-about-boces-teacher-abrupt-dismissal (last accessed Nov. 16, 2022).

[11] Because I resolve this appeal on the ground of State educational policy, I need not distinguish the First Amendment cases cited by respondent. However, I note that the Second Circuit's pre-*Garcetti* First Amendment jurisprudence would consider many, if not all, of the same factors discussed in this decision (*see James v Board of Educ. of Cent. Dist. No. 1 of the Towns of Addison et al.*, 461 F2d 566 [2d Cir 1972]; *see also Bhattacharya v SUNY Rockland Community Coll.*, 719 Fed Appx 26 [2d Cir 2017] [explaining that it is an open question whether *Garcetti v Cebalos* (547 US 410 [2006]) applies to academic freedom claims).

*Educ. of Hempstead Union Free Sch. Dist.*, 145 AD3d 1072, 1074 [2d Dept 2016] [same], *lv denied* 30 NY3d 905 [2017]; *Matter of Pepin v New York City Dept. of Educ.*, 39 Misc 3d 1214[A], at *2 [Sup Ct, New York County 2012] [holding there was no bad faith retaliation in petitioner's discontinuance when the determination "relie[d] on petitioner's admitted use of respondent's email system to send a prank email to petitioner's supervisors, falsely alleging a love triangle"]).

In light of this disposition, I need not address the parties' remaining contentions.

THE APPEAL IS SUSTAINED TO THE EXTENT INDICATED.

IT IS ORDERED that respondent's determination terminating petitioner's probationary appointment is annulled; and

IT IS FURTHER ORDERED that petitioner be reinstated to her position and awarded back pay and benefits from April 21, 2022, the date of her wrongful discontinuance, to her date of reinstatement; and

IT IS FURTHER ORDERED that respondent expunge any reference to the disciplinary events described herein, including petitioner's discontinuance.



IN WITNESS WHEREOF, I, Betty A. Rosa, Commissioner of Education of the State of New York, for and on behalf of the State Education Department, do hereunto set my hand and affix the seal of the State Education Department, at the City of Albany, this 22nd day of November 2022.

Commissioner of Education