STATE OF NEW YORK
SUPREME COURT                                          COUNTY OF ALBANY

In the Matter of the Application of                    **DECISION, ORDER**
ALBANY-SCHOHARIE-SCHENECTADY-                          **AND JUDGMENT**
SARATOGA BOARD OF COOPERATIVE
EDUCATIONAL SERVICES,

                               Petitioner,         Index No. 900037-23

      -against-

BETTY A. ROSA, in her capacity as the
Commissioner of Education of the State
of New York; NEW YORK STATE
EDUCATION DEPARTMENT, and
ADRIANNE RICKSON,

                               Respondents.

For a Judgment Pursuant to Article 78 of the
Civil Practice Law and Rules

(Albany County Supreme Court, Special Term)

APPEARANCES:         BOND, SCHOENECK & KING, PLLC
                                     Attorneys for Petitioner
                                     Kate I. Reid, Esq., Of Counsel
                                     One Lincoln Center
                                     Syracuse, New York 13202-1355

                                     HON. LETITIA JAMES
                                     Attorney General of the State of New York
                                     Attorneys for Respondents Rosa and NYSED
                                     Mark G. Mitchell, AAG, Of Counsel
                                     The Capitol
                                     Albany, New York 12224

                                     ADRIANNE RICKSON
                                     Self-represented Respondent
                                     95 Greenfield Avenue
                                     Ballston Spa, New York 12020

Justin Corcoran, J.S.C.:

This case involves a challenge to the State Education Commissioner's finding that a school board impermissibly discontinued the employment of a probationary teacher in bad faith. A probationary teacher may be terminated, or "discontinued," by the school board that employs her for any reason at any time during the probationary period unless the teacher shows that the board terminated her for a constitutionally impermissible purpose, in violation of statute, or in bad faith. Education Law §§3012 (1) (a); 3014 (1) (a); *Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y.*, 71 NY2d 763, 765 (1988). The Legislature established a process for a probationary teacher to request particularization of the reasons for termination, for the superintendent to explain those reasons to the teacher, and for the teacher to respond to the claims before the board decides her fate. Education Law §3031; *Merhige v Copiague School Dist.*, 76 AD2d 926, 927 (2d Dept. 1980) ("the statute was conceived as a procedural device to force the superintendent to lay bare the reasons for (her) recommendation so that the probationer can ascertain whether any were constitutionally or statutorily impermissible"); *Matter of Rathbone v Board of Educ. of Hamilton Cent. School Dist.*, 47 AD2d 172, 175-176 (3d Dept. 1975), *aff'd* 41 NY2d 825 (1977). A probationary teacher may appeal her "discontinuance" to the State Education Commissioner, whose determinations are subject to judicial review for irrationality or errors of law. Education Law §310; *Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ.*, 91 NY2d 133, 139 (1997); *Donlon v Mills*, 260 AD2d 260, 262 (3d Dept.) (collecting cases), *lv. den.* 94 NY2d 752 (1999).

In this CPLR article 78 proceeding, petitioner Albany-Schoharie-Schenectady-Saratoga Board of Cooperative Educational Services ("petitioner" or "BOCES") challenges the November 22, 2022 decision of respondent Commissioner of Education Betty A. Rosa ("respondent" or "the Commissioner") ordering BOCES to reinstate co-respondent Adrianne Rickson ("Rickson"), a probationary teacher terminated by

petitioner. For reasons set forth below, the petition is denied, and this special proceeding is dismissed.

In January 2019, Rickson received a probationary appointment as a career and technical education teacher in the criminal justice tenure area from BOCES, which delivers educational services to its component school districts' students. On or about November 10, 2021, Rickson used her BOCES email account to forward a message to other BOCES staff notifying them of an after-school rally concerning Covid-19 policies at the New York State United Teachers headquarters. BOCES contends that Rickson solicited her faculty colleagues to attend the rally protesting the union's support for Covid safety measures in schools.

In January 2022, Rickson offered her class an optional assignment for which "extra credit" would be awarded to students who listened to a podcast interview of a physician (who was a critic of Covid vaccinations) and submitted written responses to several questions exploring his vaccination skepticism and the public or government reaction to his ideas. Petitioner claims the podcast included inaccurate information about the safety and efficacy of Covid vaccines and lured students into accepting the misinformation.

Rickson received a counseling memo from her supervisors dated February 7, 2022 stating that her email about the rally at NYSUT violated BOCES policy and directing her to refrain from such use of her work email. This memo warned Rickson that further similar behavior like misuse of her BOCES email account would subject her to discipline, including discharge from her teaching position. It did not mention the podcast assignment.

Two days after issuing the counseling memo to Rickson about her violation of the email policy (and warning that future violations may result in discipline), by letter dated February 9, 2022, the BOCES superintendent notified Rickson that she intended to recommend that the board of education discontinue Rickson's probationary appointment effective April 21, 2022. Upon Rickson's request pursuant to Education Law §3031, the superintendent provided a written statement of the reasons for recommending the

termination of her probationary employment. The BOCES superintendent cited: (1) "[u]se of controversial materials that had no valid curricular purpose;" (2) "[f]ailure to utilize approved curriculum for instruction;" and (3) "[u]se of BOCES resources to promote misinformation." At its March 21, 2022 meeting, the BOCES board of education terminated Rickson's probationary appointment, effective April 21, 2022.

Rickson appealed to the Commissioner of Education, arguing among other things that she was wrongfully terminated based on her exercise of her First Amendment rights and protected union activity. BOCES denied Rickson's allegations and argued she was terminated for legitimate, nondiscriminatory reasons within its broad authority. The Commissioner reviewed Rickson's administrative appeal under the settled standard: "[t]he services of a probationary teacher may be discontinued at any time during the probationary period unless the teacher shows that a board terminated service for a constitutionally impermissibly purpose, in violation of a statutory proscription, or in bad faith." *Appeal of Rickson*, 62 Ed Dept Rep, Decision No. 18,147 (2022) ("*Rickson I*") (NYSCEF Doc. No 7) citing Educ. Law §3012 (1) (a*); Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y.*, *supra*, 71 NY2d 763 (1988); *James v Board of Educ. of Cent. School Dist. No. 1 of the Towns of Orangetown and Clarkstown*, 37 NY2d 891 (1975); *Capece v Schultz*, 117 AD3d 1045, 1046 (2d Dept. 2014). The Commissioner defined "bad faith" as "dishonesty of belief, purpose, or motive." *Appeal of Rickson*, 62 Ed Dept Rep, Decision No. 18,211 (2022) ("*Rickson II*") (Doc. No, 3 at p. 2) quoting *Appeals of Prisinzano*, 62 Ed Dept Rep, Decision No. 18,195 (2022), citing Black's Law Dictionary (11th ed. 2019).

The Commissioner's first decision ("*Rickson I*") summarized the rationale for the statute requiring the superintendent to disclose in writing the reasons for terminating a probationary teacher. It also noted Rickson's burden to prove both a clear legal right to the relief requested and the facts upon which she sought relief. The Commissioner then determined that the superintendent's statement of the reasons for discontinuance under Education Law §3031 were too vague to allow Rickson to ascertain whether they were constitutionally or statutorily impermissible. Specifically, the Commissioner found that

the allegations of using "controversial materials," failing to use the approved curriculum, and "promoting misinformation" without providing any dates or specific details deprived Rickson of her ability to argue that her conduct was constitutionally protected. The Commissioner declined to consider the more specific reasons for Rickson's discontinuance offered by BOCES for the first time on the initial administrative appeal because "[t]he time to provide (Rickson) with these reasons was at the local level."

Thus, in her July 7, 2022 decision, the Commissioner sustained Rickson's appeal in part and remanded to BOCES with instructions that: (1) the superintendent resubmit the statement of reasons for recommending dismissal and afford Rickson an opportunity to respond and (2) the board reconsider its decision to discontinue Rickson's appointment and make a new decision after reviewing the superintendent's revised recommendation and Rickson's response. Particularization of the ways that Rickson taught "misinformation" or "controversial" material would illuminate whether BOCES sought to fire the teacher for a constitutionally impermissible reason. However, instead of detailing her allegations about Rickson's use of misinformation or unapproved classroom material, the superintendent allegedly stated a different justification to fire Rickson, thereby shirking the Commissioner's instructions to articulate her true reasons.

Specifically, on remand, the superintendent explained her rationale for recommending that the board discontinue Rickson's appointment in a July 13, 2022 letter in which she articulated two grounds for dismissal. First, she stated that "[o]n November 10, 2021, (Rickson) violated BOCES's Acceptable Use Policy by sending a mass email solicitation without prior approval from the District Superintendent." Second, the superintendent explained that "[o]n or about January 6, 2022, (Rickson) misused (her) position as a Criminal Justice teacher by issuing an assignment that was not part of [] the approved curriculum for (her) Criminal Justice 2 course and had no valid curricular purpose." The board again voted to terminate Rickson's probationary appointment at its August 15, 2022 meeting. Rickson again appealed the board's termination decision to the Commissioner.

In a decision dated November 22, 2022 ("*Rickson II*"), the Commissioner annulled BOCES's determination terminating Rickson's probationary appointment and, among other relief, ordered her reinstated to her position with an award of backpay and benefits. In relevant part, the Commissioner found that BOCES discontinued Rickson's probationary appointment in bad faith in violation of Education Law §3012, as evidenced by "[t]he fact that [BOCES] materially altered its rationale from content-based to content-neutral complaints," thereby demonstrating "dishonesty of purpose or motive" tantamount to "bad faith." In other words, the Commissioner concluded that the superintendent obscured her true motivation, which was based upon the controversial content of a class assignment, by substituting a pretextual, contrived rationale that cited Rickson's violation of the employer's email policy and issuance of an assignment outside the approved curriculum. This special proceeding ensued to challenge the Commissioner's determination.[1]

The petition alleges the Commissioner's annulment of BOCES's termination of Rickson's probationary appointment was arbitrary, capricious, affected by an error of law, and constituted an abuse of her discretion. BOCES relies upon a school district's broad authority to terminate a probationary teacher and the exacting burden of proof borne by the teacher to show an impermissible reason for her termination. *Matter of Bernstein (Norwich City School Dist. Bd. of Educ.)*, 282 AD2d 70, 74 (3d Dept.) *lv. dismissed*, 96 NY2d 937 (2001). BOCES contends that Rickson was lawfully terminated for violating the school's policy prohibiting use of BOCES email accounts to advance personal interests and for deviating from approved curriculum when she crafted an extra-credit assignment that directed students to misinformation about Covid and the

---

[1] Petitioner initially filed a petition and sought a temporary restraining order, and then a stay pending final disposition, before filing a notice of petition. For judicial economy, the parties were asked to file initiatory papers and an answer. Before the matter was assigned to this Court, BOCES agreed to pay Rickson pursuant to the Commissioner's directive during the pendency of this proceeding, but it did not return her to the classroom.

pandemic.[2] BOCES argues further that the Commissioner irrationally concluded that its explanation for Rickson's termination was made in bad faith and the Commissioner erred when she found Rickson met her burden of proving an impermissible motive.

"When reviewing an administrative determination under CPLR article 78, judicial review is limited to whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." *Evercare Choice, Inc. v Zucker*, -- AD3d --, 2023 WL 4353603, 2023 NY Slip Op. 03741 (3d Dept. July 6, 2023) quoting *Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council*, 200 AD3d 1527, 1529-1530 (3d Dept. 2021) (internal quotation marks omitted); CPLR 7813 (3). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts." *Evercare Choice, Inc., supra* at *2, quoting *Matter of Spence v State Univ. of N.Y.*, 195 AD3d 1270, 1271 (3d Dept. 2021). "If a determination is rational it must be sustained even if the court concludes that another result would also have been rational." *Matter of Adirondack Wild: Friends of the Forest Preserve v New York State Adirondack Park Agency*, 34 NY3d 184, 195 (2019) (internal citations and quotation marks omitted). On the other hand, the Commissioner may consider educational policy matters when exercising her broad appellate authority over controversies arising in the school system and may substitute her judgment for that of the local official whose conduct she reviews. *Malverne Union Free School Dist. v Sobol*, 181 AD2d 371, 374-375 (3d Dept 1992).

The Commissioner stated that her administrative determination rested on state policy, not the probationer's rights under the First Amendment. BOCES argues that *Rickson II* impermissibly reached novel constitutional questions that should not be adjudicated in an administrative forum. *Id*. at 376, citing *Ware v Valley Stream High School Dist.*, 75 NY2d 114, 123 (1989). Despite the ostensible "state policy" basis for the Commissioner's decision, Rickson's appeal required review of education policy

---

[2] BOCES characterizes Rickson's conduct in sending the email and issuing the podcast assignment as "flagrant insubordination" without explaining what unequivocal directive, policy, or instruction she deliberately flaunted.

involving both academic freedom and the procedural requirements for giving fair notice to probationers of the reasons for termination. "Whether educational policy served as an alternative basis for the Commissioner's determination or was inextricably linked with the constitutional issue, the scope of judicial review of the determination is the same - if the determination is neither arbitrary and capricious nor lacking a rational basis, it must be confirmed." *Malverne, supra* at 376 citing *Matter of O'Connor v Sobol,* 173 AD2d 74, 77 (3d Dept. 1991), *app. dism'd* 80 NY2d 897 (1992).

The Commissioner did not act without regard to the facts or without sound reason when she annulled petitioner's decision to discontinue Rickson's probationary appointment, even though it would have been rational to sustain the board's decision, too. The Commissioner carefully evaluated both grounds advanced by BOCES to support its decision and explained why she concluded that the personnel decision was pretextual and made in bad faith.[3]

First, the Commissioner rationally concluded that Rickson's November 2021 email "violation" did not constitute a *bona fide* basis for dismissal. The policy allowed for "incidental personal use of BOCES electronic resources. . . [but not] for solicitation, fund raising or other outside purposes." Rickson's email message ("[f]or those that did not receive it and have interest. Rally at [NYSUT] today at 4") did not clearly constitute a "solicitation." More importantly, the Commissioner reasonably ascribed a pretextual motive to BOCES in citing the email offense as grounds for termination because it initially responded to Rickson on February 7, 2022 with a mere counseling memo, suggesting the employer did not view the email infraction as grounds to fire her. BOCES

---

[3] In the analogous employment discrimination setting, "pretext" may be shown by identifying "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons," allowing a reasonable person to find them unworthy of belief. *Bates v City of Chicago*, 726 F3d 951, 956 (7th Cir. 2013) (internal quotation marks and citations omitted). An employee can show pretext by showing the employer's reason "(1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate the action." *Id.* An employer's "inconsistent justifications for an employment action can be sufficient …to establish pretext." *Ludwig v Rochester Psychiatric Center*, 347 Fed.Appx. 685, 686 (2d Cir. 2009) (summary order) (internal citation omitted).

only claimed that the email constituted a serious offense that would justify termination after the Commissioner directed the superintendent to better explain how and when Rickson presented misinformation unrelated to the curriculum. The Commissioner reasonably concluded that petitioner's later reliance upon Rickson's November 10, 2021 email to support her termination, articulated only after the Commissioner faulted the superintendent's original explanation, demonstrated a "dishonesty of purpose or motive."

The Commissioner's finding concerning the extra-credit podcast assignment presents a closer question, and requires more discussion, because both the assignment and resulting discipline implicate issues related to a teacher's academic freedom and the school's right to define the curriculum. *Id.* Initially, in *Rickson II*, the Commissioner correctly explained that the right of boards of education to establish and apply curricula must be balanced against a teacher's right to academic freedom. *Matter of Malverne Union Free School Dist., supra,* at 375. "Deference to the education decisions of State and local officials – particularly in matters of curriculum – embodies several important concerns, including preservation of local democratic control over educational policy; protection of teachers' academic freedom; maintenance of policies that comport with the views of education experts; and formulation of curriculum so as to transmit community values and foster the free exchange of ideas." *Ware v Valley Stream High School Dist., supra,* at 122 (internal citations omitted); *see Matter of Bernstein, supra,* 282 AD2d at 74 (3d Dept. 2001) (school officials entitled to establish and apply curricula in manner consistent with community values provided they comport with transcendent imperatives of First Amendment). [4]

---

[4] Petitioner argues that the Third Department's holding in *Malverne* is no longer good law considering *Garcetti v Ceballos*, 547 US 410 (2006). This argument is unpersuasive because even the *Garcetti* majority stated that its holding may not apply to "speech related to scholarship or teaching." *Id.* at 425. *See Bhattacharya v SUNY Rockland Community College*, 719 Fed.Appx. 26 (2d. Cir. 2017) (summary order) ("[w]e have recognized an academic freedom claim where a restriction on speech implicates the content of a teacher's lessons or restricts a school's ability to determine its curriculum") (internal citation omitted); *Lee-Walker v New York City Dept. of Educ.*, 712 Fed.Appx. 43, 45 (2d Cir. 2017) (summary order) *cert. den.* 138 SCt 1318 (2018) (open question in Second Circuit how *Garcetti* applies to classroom instruction); *but see Schultz*

The assignment, which was sparsely accepted by students seeking extra credit, involved submitting written responses to various questions after listening to a podcast interview of a physician who criticized Covid vaccinations by an ardent, controversial anti-vaccination media personality. The questions related *inter alia* to identifying the physician's credibility/experience, his reasons for speaking out, Twitter's reasons for banning him, Sweden's Covid response, hospital incentives to diagnose patients with Covid, opinions about whether constitutional rights were upheld or violated, each student's reaction to the podcast, and any impact it had on personal views. BOCES's notice of discontinuance claimed that the assignment lacked any valid curricular purpose, resulted from Rickson's misuse of her teaching position, and used leading questions designed to push students into believing misinformation. The Commissioner examined, and sustained, Rickson's argument that the extra-credit assignment had educational value, related to curriculum, and suited the age and maturity of the students. Rickson submitted that the assignment encouraged students to think critically by comparing countries, ascertaining motives for speech, and evaluating how laws evolve as applied to scientific advancements. Although Rickson characterized the podcast as "great," which could be viewed as her endorsement of the interviewee's views, the Commissioner found no evidence that any student or parent viewed Rickson as misusing her position to promote such misinformation. The administrative proceedings contained scant proof of how the assignment was perceived by students, how many students listened to the podcast, or any statements about it by Rickson because there apparently was little or no investigation by BOCES.

The Commissioner next held that Rickson proved that the assignment was sufficiently related to the criminal justice curriculum that it could be offered as an extra-

---

*v Commack Union Free School Dist.*, -- FSupp3d --, 2023 WL 266750 (SDNY 2023) (collecting cases) (high school teachers' curricular complaints likely unprotected under *Garcetti*). As discussed, though, petitioner seemingly sought to avoid direct defense of the constitutionality of Rickson's termination by relying on her alleged deviation from curriculum and her email to colleagues. Thus, neither the BOCES board nor the Commissioner thoroughly discussed at the local level or administrative stages, respectively, how *Garcetti* applies to high school instructors.

credit assignment, primarily relying on Rickson's citation to news accounts of individuals charged with crimes due to noncompliance with vaccine mandates and the arguable connection to the syllabus units for "creating professional portfolio," "communication skills," or "legal compliance" (which was "embedded" in several course topics).[5] She also found that the assignment was suitable in light of the age and maturity of the students, who were high school juniors and seniors nearly eligible to vote. Finally, the absence of any student or parental objection bolstered her conclusion that the assignment was appropriate, noting the many positive statements submitted in support of Rickson's teaching ability. These conclusions, within the Commissioner's expertise in curriculum policy and based upon record facts, are not irrational or arbitrary.

The Commissioner compared Rickson's assignment to the description of the BOCES criminal justice syllabus before concluding that the assignment was sufficiently related to it and that the board acted in bad faith by discontinuing Rickson's employment. Such decisions fall within the expertise of the Commissioner and will not be overturned through judicial review absent proof that she disregarded facts or reason, even where, as here, another conclusion would also have been rational.

BOCES overstates both the nature of Rickson's conduct as insubordination and the implications of the Commissioner's decision reinstating her. Its allegation that Rickson engaged in "insubordination" connotes willful disobedience of a clear rule or directive. *Compare Matter of Bernstein, supra,* at 73 (teacher disregarded warnings about appropriate curriculum and need to obtain district approval for controversial matters); *see Matter of Harris v Mechanicville Central School Dist.*, 86 Misc2d 144 (Saratoga Co. Sup. Ct. 1976), *modified*, 57 AD2d 231 (3d Dept. 1977), *modified*, 45 NY2d 279 (1978) (teacher guilty of insubordination for reneging on agreement to refrain from teaching specific material).

---

[5] The Commissioner noted that BOCES did not submit the actual course curriculum, instead submitting a "scope and sequence" that outlines the "broad contours" of the course. She found that any ambiguity arising from the absence of the curriculum would not be construed in favor of BOCES.

In *Harris*, the tenured teacher taught J.D. Salinger's "Catcher in the Rye" to his sophomore English class until parents complained, prompting the school superintendent to question his teaching methods. After meeting with administrators, and as confirmed in a memorandum, the teacher agreed to cease using this book. Then, a year later, without any warning to administrators, the teacher resumed use of the book and abruptly left a meeting after he was summoned to the principal's office to discuss his conduct. The school board terminated the teacher for insubordination following administrative proceedings (that reflected the greater protection afforded to tenured faculty), prompting the teacher to commence an article 78 proceeding. Ultimately, the Court of Appeals found that the teacher's conduct constituted insubordination because he violated his agreement to refrain from teaching a particular novel and abruptly left his meeting with the principal, such that the board's decision was beyond review (except as to the penalty, which was held excessive). The teacher contested his termination at each level of judicial review by claiming that his teaching was constitutionally protected. The Court rejected his defense, finding that he was not charged with teaching unacceptable works, and he did not "firmly [stand] his ground against community pressure in defense of classroom activities" but instead was attempting to cloak his violation of his teaching agreement in constitutional issues that he did not earlier invoke. *Harris*, 45 NY2d at 283-284. Here, rather than firmly standing its ground at the local level by explaining why Rickson's assignment was inappropriate and defending against her claim that termination violated principles of academic freedom, petitioner shifted its rationale to avoid squarely addressing those issues.

The Commissioner held that Rickson did not violate school policy by using her email account for "solicitation," as her message merely alerted colleagues of an event; the counseling memo that followed does not suggest that BOCES contemporaneously viewed any purported policy violation as insubordination. Additionally, there is no evidence that Rickson deliberately ignored any directive about the extra-credit assignment, which came to the attention of BOCES after an anonymous complaint. Counsel for the Commissioner conceded during oral argument that, under existing precedent, BOCES could

prospectively prohibit Rickson or another teacher from using the podcast material and insist on compliance with its curricular limits (subject to transcendent First Amendment constraints). Teachers may not defy the school board's lawful instructions on curricula but, as the Commissioner explained, she construed the course outline in favor of Rickson's argument that the assignment related to the criminal justice syllabus. To prevent inappropriate detours by teachers in the future, BOCES may clarify the curriculum, monitor assignments, or take additional steps like those described in *Bernstein* and *Harris*, for example. Likewise, petitioner's concern about future "constitutional stalemates" may be obviated by strictly adhering to the statutory process for the parties to particularize claims at the district level, so that the parties and the Commissioner have the benefit of an administrative record that squarely presents their respective positions.

      This result does not alter the relationship between a school board and its teachers, nor does it give license to defy appropriate directions about the subject matter to be presented to students. It merely sustains the determination of the state official charged with oversight of educational policy, who concluded that for the statutory procedural protections afforded probationary teachers to be meaningful, districts must timely, candidly state the reasons for termination under Education Law §3103. The Commissioner viewed the superintendent's shifting explanation, de-emphasizing the content of Rickson's assignment, as an attempt to avoid addressing Rickson's academic freedom argument at the local level. She rationally found this attempt to constitute "bad faith" because it circumvented the superintendent's duty to lay bare the reasons for her recommendation so the probationer could ascertain any impermissible constitutional basis before the school board considered the matter. Rather than frankly list her reasons on remand, the superintendent did not specify how the podcast assignment constituted inappropriate material unrelated to the curriculum, thereby preventing Rickson from defending the assignment before the board terminated her appointment.

      The link between the violation of Rickson's right to a meaningful pre-termination notice and the academic freedom issues is plain, but the scope of review remains whether

the Commissioner acted irrationally or arbitrarily. This special proceeding record contains sufficient facts to sustain her determination that petitioner terminated Rickson without first providing the required candid explanation, as supported by her analysis of the academic freedom concerns that bolstered her findings of pretextual intent. Thus, under the deferential standard of judicial review, the Commissioner had a rational basis for annulling petitioner's termination of Rickson.

To the extent petitioner's request for a preliminary injunction remains pending, it is hereby denied, as the Court has reached a decision on the merits. *Heisler v Gingras*, 238 AD2d 702, 703 (3d Dept.) *mod. different grounds,* 90 NY2d 682 (1997) (internal citations omitted).

The parties' remaining contentions have been considered and found lacking in merit or, alternatively, have been rendered academic by the foregoing. Accordingly, for all the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the petition is hereby **DENIED,** and this special proceeding is **DISMISSED**; and it is further

**ORDERED AND ADJUDGED** that petitioner's motion for a preliminary injunction is **DENIED.**

**SO ORDERED AND ADJUDGED.**
**ENTER.**

Dated: Albany, New York
July 27, 2023

Justin Corcoran
Supreme Court Justice

Papers Considered: NYSCEF Docket Nos. 1-47.

07/28/2023

The Court has uploaded the original Decision/Order/Judgment to the case record in this matter as maintained on the NYSCEF website whereupon it is to be filed and entered by the Office of the Albany County Clerk. The Attorney General's Office shall comply with the applicable provisions of CPLR 2220 and 202.5b[h][2] of the Uniform Rules of Supreme and County Courts insofar as it relates to service and notice of entry of the filed document upon all other parties to the action, whether accomplished by mailing or electronic means, whichever may be appropriate dependent upon the filing status of the party.